## ABRAST REALTY CO. v. MAXWELL.

(District Court, E. D. New York. July 26, 1913.)

**1. INTERNAL REVENUE (§ 9\*)—CORPORATION TAXES—"DOING BUSINESS."**

Certain individuals owning the business of a department store also owned the real estate rented by the firm operating the department store, and, in order to control the real estate, lease, rents, etc., more conveniently, organized plaintiff corporation, of which they owned the stock, under the New York Business Corporations Law (Consol. Laws 1909, c. 4). The corporation was first authorized to buy, sell, rent, and exchange real property, build, construct, and alter houses thereon, manage and develop property, deal in goods, wares, and merchandise, and carry on any business connected therewith, etc. It in fact did no business, except own and operate the real property in question, and on December 26, 1911, amended its certificate of incorporation, so as to limit its powers to the mere ownership and rental of such property, with a distribution of the proceeds. *Held* that plaintiff had no property right in the form of a business privilege, and was not doing business, so as to be taxable under Corporation Tax Act Cong. Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946).

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.\*]

**2. INTERNAL REVENUE (§ 38\*)—CORPORATION TAXES—PAYMENT UNDER PROTEST—RECOVERY.**

Plaintiff corporation having been assessed for corporation taxes in January, 1912, under Corporation Tax Act Cong. Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946), and the same not having been paid, a writ of distraint was issued by the collector, and, the corporation having been notified that the tax would be collected by levy, the deputy collector took from a representative of the corporation the amount of the tax, against the verbal protest of the corporate officer at the time, and a written notice of protest then served, in which the corporation denied that it was liable to the tax. *Held*, that the protest was sufficient to entitle the corporation to recover the amount from the collector, on its being determined that the corporation was not within the law.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. § 38.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At Law. Action by the Abrast Realty Company against William J. Maxwell to recover a corporation tax paid to a deputy collector under protest. Judgment for plaintiff.

Edward N. Grout and Paul Grout, both of New York City (Edward M. Grout and F. Sidney Williams, both of New York City, of counsel), for plaintiff.

William J. Youngs, U. S. Atty., of New York City (Louis R. Bick, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant.

CHATFIELD, District Judge. Trial has been had, and a verdict in favor of the plaintiff rendered by the jury, by direction of the court. The present motion is to set aside this verdict, and, by stipulation of both parties, to direct, if that motion be granted, the entry of judgment for the defendant.

[1] The plaintiff corporation was organized under the Business Corporations Law of the state of New York, with power to—

"buy, sell, rent and exchange real property, improved and unimproved, to build, construct and alter houses thereon, and to manage and develop real property, generally, to purchase, manufacture, acquire, hold, own, mortgage, pledge, lease, sell, assign and transfer, to invest, trade, deal in and deal with goods, wares and merchandise, and property of every kind and description, and to carry on any of the above business or any other business connected therewith wherever the same may be permitted by law, either manufacture or otherwise, to the same extent as the laws of this state will permit, and as fully and with all the powers that the laws of this state confer upon corporations and organizations under this act and to do any and all of the business above mentioned and set forth in the same extent as natural persons might and could do."

All of the stock was issued to certain members of the firm of Abraham & Straus, who individually owned the real estate rented by that firm for its business. By the terms of the lease all repairs, taxes, expenses, and matters connected with the use of the property are performed and taken care of by Abraham & Straus, the lessees.

The corporation has done nothing except turn over to its stockholders the proceeds of the rent in the form of dividends. Up to December 26, 1911, the corporation exerted none of its corporate powers except as above stated, and upon that date amended its certificate of incorporation so as to limit its corporate powers to the mere ownership and rental of this property, with distribution of the proceeds.

In January, 1912, a corporation tax was assessed, under the provisions of section 38, Act of August 5, 1909, and, not being paid, a writ of distraint was issued by the collector. Notification having been given the corporation that the tax would be collected by levy, sufficient funds were in the hands of a representative of the corporation, so that the deputy collector was able to count out and take the amount necessary to cover the tax, viz., $2,166.76. Thus the writ did not have to be exhibited by the deputy.

Verbal protest had been made to the collector prior to this time, and a written notice of protest was given him at the time of levy, in which notice the corporation stated that the tax was paid under protest and that the corporation claimed that it was not liable to the

tax. Suit was thereupon brought against the collector to recover the amount, and the action has resulted as stated.

It would appear that the plaintiff corporation is organized under a statute making it prima facie liable to the tax. It had the power to engage in activities which, if exercised, would plainly make it "doing business" during the year 1911. Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

After the 26th of December, 1911, the form of its certificate and the powers exercised by it are entirely similar to those in the case of Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428, and the existence of trustees in the Minneapolis Case would not seem to narrow the liability in that case so as to form a distinction from the present situation.

Prior to the 26th of December, 1911, the government claims that the situation is like the exception noted in the case of McCoach v. Minehill & Schuylkill Haven Railroad Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. ——, in which it is said, with reference to Cedar Street Co. v. Park Realty Co., 220 U. S. 170, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312:

"We think it is clear that corporations organized for the purpose of doing business, and actually engaged in such activities as leasing property, collecting rents, managing office buildings, making investments of profits, or leasing ore lands and collecting royalties, managing wharves, dividing profits, and in some cases investing the surplus, are engaged in business within the meaning of this statute, and in the capacity necessary to make such organizations subject to the law."

But an examination of this record makes it appear that the Abrast Company did nothing before the 26th of December, 1911, in a different way than it did after that time, and that by the change in the certificate of incorporation it relinquished merely powers which it did not exercise and for which, therefore, it could not be taxed. McCoach v. Minehill & Schuylkill Haven R. R. Co., supra.

The general situation is entirely similar to that of the individuals who owned the real estate in question, and who leased it to the Abraham & Straus firm prior to the formation of the corporation. If these individuals had maintained an office for the renting of real estate, and had, in connection with that office, managed the real estate and performed all the duties connected therewith, those individuals would be held to have been in the real estate business. But if, on the other hand, they merely had title to the property, executed a lease, and had the rent paid either to a trustee for division among the owners, or directly to themselves, it would not seem that these individuals could be said to have been in business, nor to have conducted a real estate business, and the only tax upon the right to do business, or upon the business itself, would have to be levied directly upon the property involved.

So the plaintiff corporation has no property right in the form of business privilege, beyond the ownership of the real estate which is liable to a direct real estate tax, and which is not taxable under the United States statute in question.

[2] This conclusion seems to be the same as that of the Supreme Court in the cases cited, and the only remaining question is whether

the collector made a levy under sections 3107 and 3205, R. S. (U. S. Comp. St. 1901, pp. 2029, 2080), in such a way that it was equivalent to a payment without protest. In the cases of City of Philadelphia v. Collector, 72 U. S. (5 Wall.) 720, 18 L. Ed. 614, Erskine v. Van Arsdale, 82 U. S. (15 Wall.) 75, 21 L. Ed. 63, and Johnson & Johnson v. Herold, Collector (C. C.) 161 Fed. 593, it is shown that where the tax is paid under such circumstances that the terms of protest are understood and sufficiently expressed to be brought to the notice of the government, and where the levy is used merely to protect the government officer in acting under the statute, an action may be maintained to recover the tax.

For these reasons, the motion to set aside the verdict will be denied.