NEW YORK CENT. & H. R. R. CO. et al. v. GILL, Internal Revenue Collector.

(Circuit Court of Appeals, First Circuit. January 13, 1915.)

No. 1082.

INTERNAL REVENUE ☞9—CORPORATION—EXCISE TAX—RAILROADS—LEASE—"DOING BUSINESS."

A railroad having leased its property to another railroad corporation, which is operating the same, the lessor, continuing its corporate existence only, is not "doing business," so as to render it liable to taxation, under Corporation Special Excise Tax Act Cong. Aug. 5, 1909, c. 6, § 38 (Comp. St. 1913, §§ 6300–6307).

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☞9.

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

In Error to the District Court of the United States for the District of Massachusetts; George H. Bingham, Judge.

Action by the New York Central & Hudson River Railroad Company and others against James D. Gill, Internal Revenue Collector. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with directions.

Ralph A. Stewart, of Boston, Mass. (Edmund S. Kochersperger, of Boston, Mass., on the brief), for plaintiffs in error.

Asa P. French, U. S. Atty., of Boston, Mass. (Leo A. Rogers, Asst. U. S. Atty., of Boston, Mass., on the brief), for defendant in error.

Before PUTNAM and DODGE, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a question of a corporation special excise tax, assessed under Act Aug. 5, 1909, 36 Stat. It was assessed against the Boston & Albany Railroad Company, which had been duly leased to the New York Central & Hudson River Railroad Company. Under those circumstances the New York Central & Hudson River Railroad Company paid the tax under protest, and claims that the tax should be refunded to it by force of the application of the decision of the Supreme Court in McCoach v. Minehill & Schuylkill Haven Railroad Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842, and of other decisions of the Supreme Court of like class.

Possible distinctions between some of the cases decided in the Supreme Court and the case now under review have been suggested; but, considering the interpretation to be given to the words "doing business," as used in this statute, those distinctions are fanciful. That they are so in this connection is shown by Anderson v. Morris & Essex Railroad Co., decided by the Circuit Court of Appeals in the Second Circuit, on September 9, 1914, 216 Fed. 83, 132 C. C. A. 327. There the meaning of the words "doing business" in the sense of this statute was fully considered, and interpreted as having an entirely different meaning from the same words in other statutes framed with reference to other purposes. That case related to a lease from the Morris & Essex Railroad Company to the Delaware, Lackawanna & Western Railroad Company; and we accept the interpretation there given by the Circuit Court of Appeals for the Second Circuit, construing the words in this statute, "doing business," or "engaged in business," as having direct reference to the active business for which a railroad corporation is incorporated, as correct. The court held, at page 91, that these words had such relation in this statute that they must be given "an ordinary and natural signification," and in effect that the corporation must be an actively operating concern. Further, the court held:

"The lessor corporation had practically gone out of business, and was disqualified from any activity respecting the operation and management of the railroad which it had been incorporated to carry on."

This was a sensible interpretation of the statute, and one in harmony with its general terms and purposes. It would be sufficient to say that, in cases of doubt, our practice is to follow the decisions of the Circuit Courts of Appeals in other circuits; and we may add that the decision in the Second Circuit, to which we have referred, seems to us in harmony with the general terms of the statute involved, even though we

find that, in the present case, we have a casus omissus, and a gap in the legislation which we are not authorized to supply.

The exercise of corporate power by the Morris & Essex Railroad Company, which was held not to amount to a resumption of the business transferred by its lease, or a doing of business in the statutory sense, consisted in an issue of bonds at the lessee's request, in accordance with provisions contained in the lease. The lessor company in the present case, besides so issuing bonds, had on certain occasions taken steps in exercise of its right of eminent domain. The steps so taken were taken at the lessee's request, in order to obtain additional land necessary for the proper operation of the leased railroad, at the lessee's sole expense and under its direction, and in accordance with provisions in the lease. Bonds were issued to pay for the land thus acquired. We find no reason for regarding these land takings as "doing business" in the statutory sense, if, as held in the above case, and as we hold, the issuance of the bonds is not to be so regarded. We make these observations more as a matter of illustration than to fix limitations, and we do not intend thereby to detract anything from the citations from the Morris & Essex Railroad Co. Case.

Inasmuch as this case is submitted on agreed facts, we have no difficulty in directing final judgment.

The judgment of the District Court is reversed, and the case is remanded to that court, with directions to enter judgment in favor of the New York Central & Hudson River Railroad Company, with interest, and the plaintiffs in error recover their costs of appeal.