## REDFIELD *v.* BARTELS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 269. Argued March 30, 1891. — Decided April 20, 1891.

On the 16th of November, 1863, plaintiffs brought suit to recover customs duties illegally exacted, laying the *ad damnum* at $1500. On the 8th of January, 1881, they amended their claim, increasing the *ad damnum* to $20,000. There was no interest count in the declaration, and it was doubtful whether interest was at first specially declared for in any way. No account was rendered or demand made prior to the commencement of the suit, nor was any bill of particulars furnished at that time. On the 11th of May, 1882, a bill of particulars was for the first time served. The court below gave judgment for $14,394.95, with interest from the date of the several payments. *Held*, on the facts set forth at length in the opinion, showing laches on the part of plaintiffs, that they were only entitled to judgment for $1500 with interest from November 16, 1863, and $12,894,95, with interest from January 8, 1881.

THE case is stated in the opinion

*Mr. Assistant Attorney General Maury* for plaintiff in error.

*Mr. S. F. Phillips* and *Mr. F. D. McKenney* for defendants in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This suit was brought by George F. W. Bartels and others in the New York Supreme Court, November 12, 1863, against Redfield, then late collector of the port of New York, to recover back the sum of fifteen hundred dollars duties at the rate of forty per cent under Schedule B of the act of July 30, 1846, 9 Stat. 42, c. 74, that had been unlawfully assessed on charges for inland transportation on a large number of importations of champagne wine invoiced from Rheims, and exported from the port of Havre, and on one-half of one per centum excess of commissions on the said importations. Service was made November 16, 1863, and notice of appearance given, and bill of particulars and copy of complaint demanded by defendant, and the suit removed to the Circuit Court of the United States for the Southern District of New York by certiorari on February 20, 1864.

The declaration was filed March 30, 1864, and consisted of the common counts, alleging an indebtedness in the sum of $1500, for money lent and advanced; paid, laid out and expended; had and received; and due upon an account stated; and the *ad damnum* was placed at $1500. On April 20, 1864, the defendant filed a plea of the general issue, and on the next day, April 21, a jury was called and sworn in this and some other cases, and a verdict rendered in these terms:

" By consent of counsel the jury find a verdict for the plaintiffs in the above-entitled action for excess of duty with interest thereon illegally exacted from plaintiffs and paid under protest to defendant, and not barred by the statute of limitations, on commissions over one and one-half per centum on merchandise imported by the plaintiffs at New York, from

Great Britain; on commissions over two per centum on merchandise imported by plaintiffs at New York from the Continent of Europe (except Paris); on the discount of two and one-half per centum disallowed on linens imported at New York from Ireland; on charges on merchandise imported at New York from Ireland; on charges on merchandise imported at New York for the transportation of the goods from the interior of the country by railroad or water carriage incurred prior to the time of exportation; on coastwise and transportation charges from Ireland and Scotland to England on merchandise imported at New York from Ireland and Scotland via England; and on additions to make market value of said merchandise at London and Liverpool; on transportation charges from the Continent of Europe to Great Britain, on merchandise imported at New York from the Continent of Europe via Great Britain; on merchandise imported by the plaintiffs at New York, and invoiced in Bremen thalers, by the Bremen thalers having been computed in assessing duties at a higher rate than seventy-one cents, the rate at which it should by law have been computed; the amount of excess of duties exacted from the plaintiffs, and paid to the defendant, and embraced in the plaintiffs' bill of particulars to be adjusted by the clerk of the court or his deputy. It is expressly stipulated that in case it shall appear on the adjustment or otherwise in any case that the suit was not brought within the time prescribed by statute of limitations, or that the question of timeliness of protest, or the question of a sufficiency of a continuous or prospective protest shall be involved, the verdict shall be opened and opportunity to appeal be given to, and at the option of the district attorney.

"A certificate of probable cause to be entered in each case.

"The right to appeal or writ of error as above not to be reserved to the district attorney, unless the amount involved be sufficiently large to allow such writ of error."

March 16, 1865, it was ordered: "That all the orders heretofore made by this court, referring certain suits against the collector of the port of New York to the clerk of this court for adjustment, be and the same are hereby revoked, except

as to such cases the adjustment of which was actually commenced before him." July 1, 1865, this and other suits were referred by Judge Nelson to the collector of the port for adjustment. November 20, 1874, an order was entered: "That the referee therein, in adjusting any of the above causes, shall not exclude from this report any item or items for the reason that said item or items were paid more than six years before the commencement of suit, unless it shall appear that the statute of limitations was duly pleaded by the defendant in each case, and the referee is instructed to include such items in his reports and statements, unless the statute has been pleaded." Mr. Redfield having died July 22, 1877, and letters testamentary having issued to Constance C. Redfield and Frank B. Redfield, the latter, as executrix and executor, were substituted, May 22, 1880, as defendants. On the 8th of January, 1881, against the opposition of the government, plaintiffs were given leave to amend the summons and declaration by increasing the damages therein set forth to $20,000, and interest from the dates of payment, and an amendment thus increasing the indebtedness claimed, and the amount named in the *ad damnum*, with interest, was made accordingly on the face of the original papers. On the 11th of May, 1882, plaintiffs served a bill of particulars, notifying the defendants that the plaintiffs' claim " is for excess of duty paid on charges and commissions on all importations made into New York on which duties were paid to the defendants between November 1, 1853, and July 1, 1857," and giving a list of the importations. June 30, 1882, the case, with others, was referred to the clerk of the court for adjustment, according to the verdict, of the plaintiffs' claim, upon the bill of particulars served. On the 19th of September, 1882, a rule to show cause why the defendants should not be allowed to set up as additional defences the pendency of another suit for the same cause or causes of action, *res adjudicata*, and payment, was entered, but was vacated on the 20th of October. December 15, 1882, the referee made his report, to which defendants filed exceptions, which were heard March, 28, 1883, and on the 4th of April, 1883, sustained. The opinion of the circuit judge will

be found in 16 Fed. Rep. 336. A rehearing was granted and had March 4, 1884; the report was recommitted on the 16th of May, 1884, and an additional report was filed June 1, 1885, finding that the amount due plaintiffs was $14,394.95 principal and $29,988.55 interest, to the date of the report. This report was confirmed April 19, 1886, and interest directed to be computed from the date of the report to the date of entry of judgment. Judgment was signed October 3, 1887, for $51,302.48. A bill of exceptions was taken, and the case brought here on writ of error.

The order of May 16, 1884, recommitting the report, directed, among other things, "that the referee receive such evidence as the parties may present respecting the existence of laches which may affect the right of plaintiffs to recover interest under the decision of the Supreme Court in the case of *Redfield* v. *Ystalyfera Iron Co.*'" The referee transmitted the evidence taken before him bearing upon that question, and reported that he failed to see any good and substantial grounds for a finding of laches on the part of plaintiffs, which ought to deprive them of interest, and he therefore found and reported that interest should be included in the judgment. The bill of exceptions contains the evidence adduced before the referee, his report, and twenty-nine specific findings of fact, made at the request of the plaintiffs, and a finding, "as a conclusion of law," likewise so requested: "That the plaintiffs have not been guilty of laches, but have used reasonable diligence in the prosecution of this action and are entitled to interest on the amount of principal found due by the referee from the several dates of payment." And also thirty-six findings of fact as requested by the defendants, and a refusal of one finding of fact so requested, as well as refusals to find, as "conclusions of law," that the plaintiffs "have been guilty of gross laches in prosecuting this action," and "are not entitled to recover any interest whatever in this action." To this report and the decisions of the referee the plaintiffs and defendants severally filed exceptions, those of plaintiffs relating to certain refusals to find not material here. The defendants excepted to various findings by the referee in accordance with

plaintiffs' requests, and to specific conclusions relating to laches and the allowance of interest; to the referee's refusal to find as requested by defendants, "that there is no evidence in this action that these plaintiffs, or any one in their behalf, from July 1, 1865, until about April or May, 1882, when this action was referred to the present referee, have made any application to the collector of the port, as such referee as aforesaid, to have this action so adjusted," though the referee did find that "there is no evidence in this action that these plaintiffs or any one in their behalf, from April 1, 1864, until somewhere about June 30, 1882, ever made any application to this court, or a judge thereof, to have this action adjusted pursuant to the verdict therein." The defendants also excepted to the referee's refusal to find the conclusions of law requested by them. The exceptions of the parties were heard and overruled April 17, 1886. The opinion of the Circuit Court is reported, 27 Fed. Rep. 286. The order for judgment is dated April 19, 1886. Judgment was signed October 3, 1887, as before stated. To this order and the decision of the court embodied therein the defendants duly excepted, in so far as the same overruled the defendants' exceptions as to the allowance of interest in the case.

In the view which we take, we do not deem it necessary to recapitulate the various findings of fact by the referee. It should be said, however, that it appeared, among other things, therefrom, that a suit was commenced by plaintiffs in 1860 to recover excesses of duty paid on charges and commissions from November 1, 1853, to July 1, 1857, in which judgment was finally entered February 17, 1864, which was paid April 7, 1864; and that after the judgment was paid certain missing entries and invoices were found in the record room of the custom-house, and the referee held that it was through no fault of the plaintiffs that the amounts sought to be recovered in this suit were not included in the prior action, which covered practically the same period of time, and that if the omission to include the amounts in the former suit had been through any fault or negligence of the plaintiffs it was cured by the verdict entered April 21, 1864, by consent.

We agree with the Circuit Court that the consent verdict may be properly treated as a stipulation, and that it precluded the defendants from denying that the plaintiffs were entitled to recover excess of duties illegally exacted by and paid under protest to the defendants' testator; and that under the circumstances, the defence of the former suit, judgment and payment could not be availed of. And while by that so-called verdict the defence of the statute of limitations was expressly reserved, yet, on the 20th of November, 1874, it was ordered that items barred by the statute should not be excluded from the recovery except in cases where the statute had been pleaded, and as that order was not objected to, nor exception taken at the time, the court correctly assumed that the government had waived the stipulation so far as intended for its protection in that regard, and hence that there could be a recovery of the items named in the bill of particulars in this case, notwithstanding they were all barred upon the face of this record under the statute of limitations of New York then applicable. *Barney* v. *Oelrichs*, 138 U. S. 529. When that verdict was consented to, plaintiffs asserted an indebtedness of $1500, and nearly seventeen years afterwards, on the 8th of January, 1881, they were permitted by amendment to raise the amount of the alleged indebtedness from $1500 to $20,000 and interest, and no exception seems to have been taken to the granting of that amendment. The bill of particulars was served on the 11th of May, 1882. These are matters of record and were also found by the referee. Treating the findings of fact and conclusions of law of the referee, and the action of the court in passing upon the exceptions to the referee's report and findings, as adopting the referee's conclusions, and to be considered either as a special verdict or as findings of fact and conclusions of law by the court, the same having been duly excepted to, the question arises whether the judgment rendered is justified by those findings. If upon the facts the court had instructed a jury to find the interest allowed in this case, and such an instruction had been excepted to, or if the case had been submitted to the court for trial, and findings of fact and conclusions of law had been

made accordingly, the question whether there was error resulting in the judgment as rendered would be open to us; and we hold that this is so upon this record.

In *Redfield* v. *Ystalyfera Iron Co.*, 110 U. S. 174, 176, the court, speaking by Mr. Justice Matthews, said: "Interest is given on money demands as damages for delay in payment, being just compensation to the plaintiff for a default on the part of his debtor. Where it is reserved expressly in the contract, or is implied by the nature of the promise, it becomes part of the debt, and is recoverable as of right; but when it is given as damages, it is often matter of discretion. In cases, like the present, of recoveries for excessive duties paid under protest, it was held, in *Erskine* v. *Van Arsdale*, 15 Wall. 75, that the jury might add interest, the plaintiff ordinarily being entitled to it from the time of the illegal exaction. But where interest is recoverable, not as part of the contract, but by way of damages, if the plaintiff has been guilty of laches in unreasonably delaying the prosecution of his claim, it may be properly withheld." That was the case of an action begun on December 30, 1854, to recover from the collector of the port of New York money alleged to have been illegally exacted by him for customs duties and paid under protest, and, on the 15th of December, 1856, a verdict was taken by consent in the sum of $1500, subject to adjustment at the custom-house as to the amount. Judgment was finally entered August 22, 1883. The case made, which, by the terms of the verdict, either party was at liberty to turn into a bill of exceptions, set forth the entire evidence, but was not an agreed statement of facts, nor a special verdict, nor a finding of facts by the court, and contained no exceptions. It could not, therefore, be treated as the basis for an assignment of errors, but this court, notwithstanding, held that the Circuit Court erred in allowing interest from December, 1854, until August, 1883, a period of nearly twenty-nine years, because the delay in the prosecution of the suit was to be attributed to the plaintiff below. This was in view of the fact that "the verdict was purely formal, and was entered by consent, after the hearing of the evidence, merely as a basis for further

proceedings, which were to consist in an adjudication by the court of the questions of fact and law arising upon the testimony, and liquidation of the amount to be recovered in case the legal liability was found to exist."

In *United States* v. *Sanborn*, 135 U. S. 271, 281, *Redfield* v. *Ystalyfera Iron Co.* was cited with approval, and the court said : "That the same rule should be applied against the government when, in a case like the present one, it has long delayed an assertion of its rights, without showing some reason or excuse for the delay, especially when it does not appear that the defendant has earned interest upon the money improperly received by him."

In the case at bar, the findings give the grounds upon which the referee and the court concluded that the delay which had intervened was not fairly attributable to the plaintiffs, and the Circuit Court said that it " arose mainly from complications incident to the fact that the suit was one of a very large number of similar suits in which questions affecting the defendants' liability were being litigated from time to time with varying results; that any recovery which plaintiffs might have obtained would not have been acquiesced in by the government, but would have been further litigated ; and that their claim was to that extent involved with the trials and results of the other suits that it was reasonable to postpone the trial in prospect of an adjustment, which at times seemed to be near at hand, but was constantly deferred by the vacillating action of the officers of the government."

We are satisfied, however, that the judgment cannot be sustained upon those grounds. The indebtedness plaintiffs set up on the 16th of November, 1863, when the summons was served, was $1500. The indebtedness they were permitted to claim on the 8th of January, 1881, was $20,000. The amount of principal found by the referee, and for which judgment was entered, was $14,394.95. Interest was allowed from the date of the several payments aggregating that amount, (all of which were made between November 1, 1853, and July 1, 1857,) to June 1, 1885, and from that date to the third of October, 1887, when judgment was signed for $51,302.48. The

bill of particulars was not, as we have said, served until May 11, 1882.

All of the items sought to be recovered were barred by the statute of limitations. A suit had been brought as early as 1860 upon the same cause of action, had gone to judgment, and the amount had been promptly paid, but plaintiffs were nevertheless permitted to recover in this action upon the ground that these collections had not actually been included in the former recovery, and that the consent, verdict or stipulation waived the defence of *res adjudicata.* Whether the $1500 originally sued for contained interest, or what particular items were included, does not appear. There was no interest count, and it is doubtful if interest was at first specially declared for in any way. No account was rendered or demand made prior to the commencement of the suit, nor was any bill of particulars furnished at that time.

As interest was recoverable as damages only, upon the principle of wrongful detention of the debt, or of unreasonable and vexatious delay in payment, we are not inclined to regard the debtor as in default for inability to inform the creditors of the extent of the deprivation of which they might complain; but, on the contrary, hold that the lack of diligence on the part of plaintiffs in the assertion of their claim was so great that no interest should have been allowed from anterior to the commencement of the suit, and that such allowance must be limited by the date of service and of the amendment which enabled plaintiffs to recover the larger amount, and to the sums claimed at those dates, respectively. The total principal awarded was $14,394.95, or $12,894.95 after deducting $1500.

*The judgment is reversed, and the cause remanded, with a direction to the Circuit Court to enter judgment for $1500 and interest from November 16, 1863, and for $12,894.95 with interest from January 8, 1881.*