## NATIONAL HOME FOR DISABLED VOLUNTEER SOLDIERS *v.* PARRISH.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 678.   Submitted May 5, 1913.—Decided June 9, 1913.

The exemption of the United States from payment of interest on claims in the absence of authorized engagement to pay it does not, extend to subordinate governmental agencies.

While no rule is now laid down for all governmental agencies, this court holds that the National Home organized under statute now § 4825, Rev. Stat., is not exempt from payment of interest.

194 Fed. Rep. 940, affirmed.

THE facts, which involve the liability of governmental agencies for payment of interest, are stated in the opinion.

*Mr. Assistant Attorney General Adkins, Mr. Assistant to the Attorney General Fowler* and *Mr. Karl W. Kirchwey* for appellant.

*Mr. R. E. L. Mountcastle* for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This appeal brings under review a decree allowing interest on the amount found due a contractor upon two contracts for the construction of buildings for the Mountain Branch of the National Home for Disabled Volunteer Soldiers.

The Home is a Federal corporation created by legislation now embodied in Rev. Stat., §§ 4825 *et seq.* as "an establishment for the care of disabled volunteer soldiers

of the United States Army." The erection of the buildings was undertaken by the Home in pursuance of express Congressional authority and after an appropriation for that purpose had been made from the National treasury. January 28, 1901, 31 Stat. 745, c. 184. The contracts called for the completion of the work by the contractor on or before designated dates, which were extended. At the expiration of the last extension the contractor was in default, although the work was largely performed, and the Home, under power reserved in the contracts, proceeded with the completion of the buildings.

In a bill exhibited by the Home against the contractor, in the Circuit Court of the United States for the Eastern District of Tennessee, and in a cross-bill by the contractor, the parties presented for judicial determination various matters of difference arising out of the contracts and what was done under them. A hearing resulted in a decree awarding the contractor, upon the contracts, the sum of $21,139.12, to which interest was added from the date when the buildings were fully completed and occupied by the Home. From so much of the decree as allowed interest the Home appealed to the Circuit Court of Appeals, which rendered a decision of affirmance, 194 Fed. Rep. 940; and then the Home appealed here. The sole error assigned challenges the allowance of interest. It is not insisted, nor could it reasonably be, that this allowance was inequitable or an abuse of discretion in the particular circumstances; so, the only question is, whether in law there was an insuperable obstacle to allowing interest.

The Home is without capital stock, shares or shareholders; is an eleemosynary institution created by the Government to manifest and discharge its sense of gratitude towards those who rendered service in its defense; is under the ultimate supervision of Congress; is supported and maintained from the National treasury, and

is essentially a governmental agency. In defining its powers the statute declares that it shall "have perpetual succession, with powers to take, hold, and convey real and personal property, establish a common seal, and to sue and be sued in courts of law and equity; and to make by-laws, rules, and regulations, not inconsistent with law, for carrying on the business and government of the home, and to affix penalties thereto" (§ 4825); also "to procure . . . sites, . . . and to have the necessary buildings erected" (§ 4830).

It is not questioned that the Home was empowered to make the contracts upon which the recovery was had, or that it was suable thereon; but it is urged that interest is not recoverable against the United States in the absence of some statutory provision or authorized stipulation, and that, as the Home is a governmental agency, a like exemption applies to it.

It is quite true that the United States cannot be subjected to the payment of interest unless there be an authorized engagement to pay it or a statute permitting its recovery. *Angarica* v. *Bayard,* 127 U. S. 251, 260; *United States* v. *North Carolina,* 136 U. S. 211, 216. But this exemption has never as yet been applied to subordinate governmental agencies. On the contrary, in suits against collectors to recover moneys illegally exacted as taxes and paid under protest the settled rule is, that interest is recoverable without any statute to that effect, and this although the judgment is not to be paid by the collector but directly from the treasury. *Erskine* v. *Van Arsdale,* 15 Wall. 75; *Redfield* v. *Bartels,* 139 U. S. 694.

Without now attempting to lay down a rule for all governmental agencies, we think the exemption of the United States is not applicable to the Home. It is a distinct corporate entity, invested with powers, duties and responsibilities which, in the judgment of Congress, required that it be given power to sue in its own name

and be subjected to liability to be sued. Although under the ultimate supervision of Congress, it has a board of managers which exercises a general control over its affairs, and has a corps of other officers of its own, who are in immediate charge of its activities. It makes contracts and incurs contractual liabilities in its own name, expends and disburses the moneys available for its support and maintenance, and in general occupies a position which takes it without the reasons underlying the Government's exemption from interest. It is significant that the statute permitting suits in the Court of Claims against the Government contains a provision expressly restricting the allowance of interest (Rev. Stat., § 1091), while the statute authorizing suits against the Home contains no such restriction. And it is also significant that the latter authorization is not confined to any particular court, but extends generally to "courts of law and equity." It may be, as has been held elsewhere, that such authorization does not embrace suits for tortious acts of the officers of the Home (see *Overholser* v. *National Home*, 68 Ohio St. 236; *Lyle* v. *National Home*, 170 Fed. Rep. 842), but, if so, this does not prove or indicate that in suits to enforce contractual obligations the amount of the recovery is not to be determined by the standards applicable to other litigants.

We think the courts below took the right view of the question, and the decree is accordingly

*Affirmed.*

THE CHIEF JUSTICE took no part in the consideration or decision of this case.